Reg PRICHARD et al., Appellants,

v.

Robert L. COWICK, Appellee.

No. 6556.

Court of Civil Appeals of Texas.

Amarillo.

Jan. 30, 1956.

Rehearing Denied March 5, 1956.

Simpson, Clayton & Fullingim, Strickland & Sloss, Amarillo, James R. McKinney, Oklahoma City, Okl., for appellants.

Underwood, Wilson, Sutton, Heare & Boyce, Amarillo, G. M. Fuller, Oklahoma City, Okl., C. A. Stein, Amarillo, of counsel, for appellee.

MARTIN, Justice.

Mava D. Prichard and husband, Reg Prichard, hereinafter designated appellants, owned and operated the Arthur Murray School of Dancing in Amarillo, Texas. They accepted notes for dancing instruction which notes were placed for collection with Reserve Plan, Inc. of Kansas City, hereinafter referred to as Reserve Plan, Inc. Reserve Plan, Inc. would advance to appellants 50% of a note as transferred to it for collection and upon final payment of the note would retain 10% as a collection fee and would pay the balance of 40% to the appellants. Under this plan of financing, Reserve Plan, Inc. retained a certain amount of the collections as a reserve fund to secure them as to money advanced to the appellants on notes. Each month, Reserve Plan, Inc. presented to appellants a refund report setting forth the notes uncollected on which it desired a refund of the 50% as theretofore paid to appellants. This report was sent out by the corporation on a form designated as "Refund Report" and appellants repaid the funds advanced to them on the notes as shown on the report.

The undisputed testimony reveals there had accumulated in the reserve fund held by Reserve Plan, Inc. the sum of approximately $14,801.46. In operating the dance studio, appellants were further required to keep a trust fund on deposit with Arthur Murray, Inc. of New York City, the principal corporation, as an escrow fund to in-

sure that appellants would comply with the studio contracts and obligations. This escrow fund was in the approximate amount of $8,600.

Appellants entered into a written contract with appellee selling to him the studio, equipment, the escrow fund and the reserve fund and notes on deposit with Reserve Plan, Inc. Appellee executed to appellants a promissory note of the face value of $25,000 in payment for the studio, business and funds in the reserve and escrow accounts but the note provided therein for certain discounts in the event of payment of the note before maturity or in the event of a sale of the dance studio. This note was transferred by appellants to Jack Swiger, also an appellant in this cause of action. The issue as to appellee's claim to credits and offsets on this note in the possession of Swiger will be discussed herein only briefly as Swiger's rights are dependent upon the outcome of the litigation between appellants and appellee.

The note transferred to Jack Swiger, as found by the trial court, was dependent as to amount of payment on elements outside the instrument itself and was not a negotiable instrument. For example, the note was subject to discount on payment under certain conditions and one element determining the amount of discount was that the same was conditioned on a sale of the studio. Further, it was stipulated by the parties that Jack Swiger's attorney, James R. McKinney, acted for him in the purchase of the note with knowledge that appellee was making some claim for adjustment or reimbursement he felt was due him as credit on the note. As apparent from the face of the note as well as from the stipulation of the parties, Jack Swiger was not a bona fide purchaser of the nonnegotiable note and takes the same subject to any offsets and credits due from the appellants to appellee. Lane Co. v. Crum, Tex.Com.App., 291 S.W. 1084, Syl. 2; Embry v. Federal Credit Bureau, Tex.Civ.App., 39 S.W.2d 906

The rights as between appellants and appellee may be adjudicated solely on the written instruments in the record. In the written sale contract between such parties with reference to the sale of the reserve fund of $14,801.46 and notes held by Reserve Plan, Inc., the contract provides:

"Sellers shall pay all refunds due by reason of delinquent notes up to and including May 23, 1953."

Under this provision, appellants contend they were to pay only the refunds requested by Reserve Plan, Inc. to the date of May 23, 1953. The appellee contends that, under such provision, appellants were to pay all delinquent notes up to and including May 23, 1953. These two contentions formulate the issue before this Court. There are other minor items of dispute which will also be adjudicated herein. The trial court held with appellee and rendered judgment against appellants for all delinquent notes to the date of May 23, 1953 in the amount of $10,783.02 as well as for other items. These sums as found by the court were reduced by certain credits held to be due the appellants and the final judgment in the trial court was for the sum of $9,773.20. This amount was also adjudicated to be a credit against the note executed by appellee and owned by appellant, Jack Swiger. Appellants appealed from this judgment. The rulings made herein dispose of all points of error.

The record in this cause is quite involved but the issue above stated is clearly determined by the written instruments in the record. The various instruments need not be quoted in their entirety for a correct adjudication of the cause of action. The written contract executed by appellants and appellee provides that the sellers, appellants herein, agreed to:

"* * * execute the necessary assignments to carry into effect the transfer of the contingent reserves and monies in Escrow Fund hereinbefore mentioned; * * *."

In consummation of this contract provision, a written assignment was executed by Mava D. Prichard and husband, Reg Prichard.

Appellee, Robert L. Cowick, likewise executed such assignment and agreed:

"I hereby accept the benefits under the foregoing assignment and accept and agree to the terms thereof."

This assignment resolves the issue in the cause of action. The first paragraph of such assignment provides for the sale to appellee of the contingent reserve fund and all sums due or to become due by virtue of notes held by Reserve Plan, Inc. and provides specifically in the second paragraph thereof:

"Sellers (appellants) shall pay all *refunds* due *by reason of delinquent notes up to and including May 23, 1953.*"

In the next paragraph of said assignment is contained the further provision:

"It Is Understood And Agreed that any and *all liability upon* the *aforesaid notes* or otherwise in connection with said contingent reserves *is assumed by the said Robert L. Cowick* (appellee)."

No choice of words by this Court could more adequately define the rights of the parties than this specific written assignment. Appellants therein agreed to pay all refunds and appellee assumed all liability upon the delinquent notes up to and including May 23, 1953. No other sound interpretation of this concisely written instrument can be had. Appellants' points of error on such issue are sustained. Benge v. Scharbauer, 152 Tex. 447, 259 S.W.2d 166, Syl. 1, 2; Murphy v. Dilworth, 137 Tex. 32, 151 S.W.2d 1004.

The above instrument is conclusive as to the rights of the parties and as to the distinction made by the parties between "refunds" and "delinquent notes." However, the record is undisputed that "refunds" constituted only refunds as to the notes on which Reserve Plan, Inc. had demanded repayment by their monthly "Refund Report." The evidence also reveals that not all delinquent notes were placed on the "Refund Report" for a refund. Further, appellee,

Cowick, clearly reveals that such was his interpretation of the written contract he executed. There were only two minor items of credit adjustment between the parties following the execution of the contract. One of these items was a debt for watches to be used as prizes in the dance school and such watches were purchased by appellants in the amount of $423.38. Another item in issue was as to refunds on certain accounts as between appellants and Reserve Plan, Inc. in amount of $395.64. These two items total the sum of $819.02. With these two minor items of debt in discussion between appellants and appellee, it must be further noted in conjunction therewith that appellee testified as to a conversation with Charles Redhair of Reserve Plan, Inc. wherein appellee requested a composite report on all accounts held by Reserve Plan, Inc. for the Amarillo Studio. Appellee further testified that he received this report of all accounts on May 23 or May 25, 1953. On May 30, 1953, appellee wrote Charles Redhair a letter in which is found the following statement:

"I understand, though, that it will be impossible for you to release the account until the additional *eight hundred and some odd dollars* has been paid to you by the Pritchards."

In the light of such letter by appellee, it is more than a coincidence that the item as to watches and as to the refunds mentioned above totaled the sum of $819.02. Further, although appellee had been delivered a complete report of all delinquent notes as requested by him and had possession of the same either five or seven days prior to writing such letter, he did not mention therein his later asserted claim for $10,-783.03 alleged to be due him for delinquent notes to May 23, 1953. It is not a sound assumption from the evidence that this was a mere oversight on the part of appellee particularly in the light of his final statement in such letter:

"* * * and Charley, I want to thank you for all the help you have given me getting this account straight-

ened out with the Pritchards at Amarillo. I'll look forward to seeing you sometime in the future when I am in Kansas City.

> "Cordially yours,
> "/s/ Larry
> "R. L. Cowick"

Appellee further testified that he made his first complaint as to the delinquent notes in November, 1953 yet on January 23, 1954 he wrote a letter to Mava D. Prichard as to his purchasing the note given by him for the studio business and in such letter he made no complaint whatsoever as to delinquent notes or otherwise. It is thus apparent that his theory that the contract provided for appellants to pay all delinquent notes to May 23, 1953 and that thereby he was entitled to a credit on his note of approximately $10,000 had not been formulated at that late date.

■ Appellee attempts to raise an issue of fraud in alleging that Mava D. Prichard falsely and fraudulently lead him to believe that the notes were in good condition. But, while the parties were negotiating the contract as executed, appellee and his attorney secretly called Reserve Plan, Inc. and were advised there were a number of delinquent notes. Such fact as established by the undisputed record disposes of appellee's issue as to fraud and particularly so in the light of the facts hereinabove discussed. Holt v. Manley, Tex.Civ.App., 146 S.W.2d 773, Syl. 5, 6; Leavell v. Lincoln County Mut. Fire Ins. Co., Tex.Civ.App., 243 S.W.2d 223, Syl. 2.

In addition to the above evidence in the record as to the appellee's interpretation of the contract and as to his failure to make any claim as to the notes within a reasonable time, the record contains another item of particular import. Mrs. Prichard testified that, following the execution of the contract, she and her husband held a meeting with appellee, at which meeting Charles Redhair for Reserve Plan, Inc. was present and also Charles W. Budd. Budd had been employed by appellants and had also continued in the employment of appellee after appellee assumed management of the studio. Mrs. Prichard testified that at such meeting the issue of refunds was gone into thoroughly and the amount of the refunds due Reserve Plan, Inc. was ascertained and agreed upon by all the parties. Appellant, Mava D. Prichard, was corroborated in this testimony by Redhair and Budd who were disinterested witnesses in the transaction as between Mava D. Prichard and Cowick. Appellee, Cowick, sought to rebut the testimony of Mava D. Prichard as corroborated by both Redhair and Budd by the following testimony given in rebuttal on examination by his own counsel:

"Q. Do you recall a meeting after you purchased the Amarillo Studio, very shortly thereafter, with Mr. Redhair and Mr. and Mrs. Prichard and Mr. Budd, here in Amarillo? A. Yes, sir; *I called that meeting.*"

After giving the above-quoted testimony, appellee denied that he entered into any agreement concerning the refunds on delinquent accounts. He was again interrogated by his counsel:

"Q. What, briefly, transpired at that meeting with those people I mentioned? A. It was very brief, only a short while; there was discussion about this, that and the other account, and I excused myself; I did not enter into it. It was Mr. Redhair meeting with the Prichard's, and *it wasn't my matter * * *.*"

The Court is thus left with the intriguing question as to why appellee "called that meeting" as no further evidence of any import was developed by him. This meeting, the only one held as to clarifying the refunds, occurred about seven days following the sale of the studio and the sale contract as to the studio is dated May 21, 1953. On May 30, 1953, appellee wrote the letter to Charles Redhair of Reserve Plan, Inc. in which he stated:

"I want to thank you for all the help you have given me getting this account straightened out with the Pritchard's at Amarillo."

Redhair and Budd, disinterested witnesses, wholly corroborate Mrs. Prichard on the fact that such meeting actually did take place and Mrs. Prichard is likewise corroborated by Cowick as to such meeting occurring and as to the parties present at the same and matters discussed. Such established facts, coupled with the further fact that appellee himself testified that he "called that meeting," can only lead to the sound conclusion that, once appellee had called such meeting, he entered into the discussion as engaged in there and later wrote Redhair thanking him for the help given appellee in getting the account straightened out with the Prichard's at Amarillo. This fact situation clearly reveals that following the making of the contract appellee made no contention that he was entitled to a credit of approximately $10,000 by reason of the fact appellants were to pay all delinquent notes to May 23, 1953.

The issue on appeal as established wholly by the written instruments executed by the parties reveals that appellants were to pay the refunds as requested by Reserve Plan, Inc. to the date of May 23, 1953 while appellee assumed full liability for all delinquent notes to such date as not refunded. The evidence as detailed in the paragraphs above is not required to correctly ascertain the rights and obligations of the parties to the written contract but reveals that the record fully corroborates the Court's interpretation of the written instruments in issue.

■ The testimony is considerably garbled as to certain franchise fees alleged to be owing by the Prichard's to Arthur Murray, Inc. of New York City but the judgment of the trial court finding there were franchise fees due in the amount of $173 as owed by the Prichard's will be sustained. There is also testimony in the

record that the wrist watches of the cost of $423.38 were returned by appellants to the sellers but, as pointed out by counsel for appellee, there is no evidence that sellers accepted the watches and cancelled the account. Therefore, the judgment of the trial court will be affirmed wherein it found that appellants owed $173 for franchise fees and $423.38 for wrist watches purchased before May 23, 1953.

■ An examination of Defendant's Exhibit Two, a letter signed by Mava D. Prichard to Reserve Plan, Inc., in the light of Plaintiff's Exhibit Seven, which Exhibit Seven is the answer to the letter of Mava D. Prichard as written by Charles Redhair for Reserve Plan, Inc., reveals a disputed item of $395.64. This sum is due appellee since the testimony of Charles Redhair reveals that this item as owed by appellants was actually paid by appellee.

The judgment of the trial court is accordingly reversed other than as to the sum of $423.38 for watches and the sum of $173 for franchise fees and as to such items only the judgment of the trial court is affirmed. Judgment is further rendered here that appellee recover the sum of $395.64 as paid by him to Reserve Plan, Inc. on appellant's debt. These rulings effect a final judgment here in behalf of appellee for the sum of $992.02 as against appellants, Reg Prichard and Mava D. Prichard. Since the note as owned by Jack Swiger is a non-negotiable note as transferred to him with notice of the above claims, it is subject to an offset in such amount of $992.02 as owing by appellants, Reg Prichard and Mava D. Prichard, to appellee, Cowick, in the event such sum is not paid by appellants.

The judgment of the trial court is affirmed in part and is reversed and rendered in part as above detailed.