**BACHE HALSEY STUART SHIELDS, INCORPORATED, Appellant,**

v.

**ALAMO SAVINGS ASSOCIATION OF TEXAS, Appellee.**

No. 16591.

Court of Civil Appeals of Texas, San Antonio.

Dec. 31, 1980.

Jack H. Kaufman, Robert W. Loree, Green & Kaufman, San Antonio, for appellant.

R. Laurence Macon, Patrick K. Sheehan, Cox & Smith, San Antonio, for appellee.

## OPINION

CADENA, Chief Justice.

Plaintiff, Bache Halsey Stuart Shields, Incorporated (Bache), appeals from a summary judgment rendered in favor of defendant, Alamo Savings Association of Texas (Alamo), denying Bache's prayer seeking to prevent Alamo from leasing space to one of Bache's competitors in a building owned by Alamo.

Bache is engaged in the securities brokerage business and is presently renting space from Alamo in the Alamo Savings Tower. Prior to the execution of the lease agreement between the parties, Bache maintained its offices in the Gunter Hotel in downtown San Antonio. There is summary judgment evidence to the effect that Bache wished to move from downtown San Antonio in order "to get away from" Merrill, Lynch, Pierce, Fenner & Smith, Inc., one of Bache's competitors whose place of business was "in close proximity" to Bache's downtown office.

In the lease agreement between Bache and Alamo, Alamo agreed to assume the future rental payments on the Gunter Hotel lease. The lease instrument contained an addendum which provided that Alamo "does hereby grant [Bache] the right to exclude any company engaged in the securities brokerage business as Lessee from the Alamo Savings Tower and the Gunter Hotel premises."

The lease instrument described the "leased premises" as "consisting of approximately 5,465 square feet situated on the ground Floor(s) of the Alamo Savings Tower (the 'Building'), located on Lot 28, Block

1, New City Block 12571 in the City of San Antonio ... and having a street address of 901 N.E. Loop 410." At the time the exclusionary clause was being negotiated, Alamo made public its plans to construct a second tower 100 feet away from the first tower on the same Lot 28, with the two buildings to be connected by an enclosed mall or atrium. Alamo had earlier informed Bache of these plans.

In April, 1976, Bache entered into possession of the leased premises in Alamo Savings Tower. Subsequently, Alamo began construction of the second tower, but the plans for the second building had been modified by eliminating the enclosed mall or atrium connecting the second building to the first. On September 12, 1979, Alamo agreed to lease space in the second tower to Merrill, Lynch, Pierce, Fenner & Smith, Inc., a competitor whose previous office was in "close proximity" to Bache's office in the Gunter Hotel. This second lease described the leased premises as consisting of "approximately 12,411 square feet situated on the first floor of the eight-story office building ... to be constructed on the East ½ of Lot 28, Block 1, New City Block 12571, in the City of San Antonio, ... and having a proposed street address of 903 N.E. Loop 410."

Bache then filed this suit, alleging that the second lease to its competitor violated the exclusionary clause in Bache's lease. Alamo filed its motion for summary judgment, asserting that the language of the exclusionary clause was unambiguous and, as a matter of law, applied only to office space in the building occupied by Bache.

■ It is true that, standing alone, the language on which Bache relies seems clear and unambiguous and restricted to space in the first building. But where a question concerning the interpretation of a contract arises, a court will "take the wording of the instrument, consider the same in the light of the surrounding circumstances and apply the pertinent rules of construction thereto and thus settle the meaning of the contract." *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 519 (Tex.

1968). *See also, Harris v. Rowe,* 593 S.W.2d 303, 306 (Tex.1979). This is true despite the rule that in the usual case the instrument alone will be deemed to express the intention of the parties without reference to the subjective intent of one or the other party. *City of Pinehurst v. Spooner Addition Water Co., supra* at 518. *See* 3 Williston on Contracts § 610 (1936); Restatement of the Law of Contracts § 230 (1932).

Under the "latent ambiguity" rule, "even though a written contract be unambiguous on its face, parol evidence is admissible for the purpose of applying the contract to the subject matter with which it deals; and if by reason of some collateral matter an ambiguity then appears, proof of the facts and circumstances under which the agreement was made is admissible, in order that the language used in the contract may be read in the light thereof for the purpose of ascertaining the true intent of the parties expressed in the agreement." *Murphy v. Dilworth,* 137 Tex. 32, 151 S.W.2d 1004 (1941).

■ The surrounding circumstances in this case were that Bache desired to "get away from" its competitor, Merrill Lynch, which had offices in "close proximity to" Bache's former offices in the Gunter Hotel. Clearly, one purpose of the clause in question was to allow Bache to achieve this purpose. At the time the Bache lease was being negotiated, Alamo had made known to Bache its intention to build a second tower on the same lot. Under these circumstances, there is at least an issue of fact as to whether the parties intended that Alamo would be free to lease space in the second building to Bache's competitor, thereby restoring the condition which Bache was trying to escape—the "close proximity" of such competitor.

Because of the surrounding circumstances, it cannot be said that the record before us establishes as a matter of law the absence of all material issues of fact concerning the intention of the parties. Under such circumstances, the court erred in granting Alamo's motion for summary judgment.

The judgment of the trial court is reversed and the cause is remanded for trial on the merits.